### QUIGLEY v. LEVERING et al.

(Supreme Court, Appellate Division, First Department. April 20, 1900.)

INJURY TO SERVANT—DEFECTIVE MACHINERY—NEGLIGENCE OF FELLOW SERVANT.

> A piece of apparatus known as a "trolley" ran on an elevated track, which was in three sections, each of which could be laterally moved, independent of the other section, and there was an automatic stop provided to keep the trolley from running off the track when a section was out of place. The track was so situated that the men working below could see if a section was out of place, and they had been warned of the danger. A servant was killed by the fall of the trolley, caused by its being moved by a fellow servant, who knew that the track was out of place, and by the failure of the stop to work. The stop was not well oiled at the time of the accident, but the master had servants whose duty it was to see that it was oiled. The machine was not defective or unsafe. *Held* not sufficient to show that the master was liable for the injury.

Appeal from trial term, New York county.

Action by Mary Quigley, as administratrix of the estate of Michael Joseph Quigley, against William M. Levering and others, to recover for the death of intestate. From a judgment in favor of defendants, and an order overruling a motion for a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and McLAUGHLIN, JJ.

Philo P. Safford, for appellant.
Eugene L. Richards, Jr., for respondents.

O'BRIEN, J. This action was brought to recover damages for the death of the plaintiff's intestate, which, it is alleged in the complaint, was caused by the negligence of the defendants, his employers, who were manufacturers of architectural ironwork, and the plaintiff's intestate was one of their workmen. On the 24th of December, 1896, while at work in the defendants' factory, the decedent was struck by part of an apparatus, known as a "trolley," which fell from a track about 16 feet above him. He received injuries from which he died. The trolley was an apparatus moved by wheels, and when in operation ran along an elevated track consisting of three longitudinal sections. From the trolley were suspended iron chains. The apparatus was used for moving beams or other heavy material. The track ran north and south. Its three sections were movable laterally; that is to say, they could be shifted east and west, so as to make a junction with another track. The defendants devised and had in use what is called an "automatic" arrangement,

designed to prevent the trolley from running off the track and falling when one of the sections was removed. This "automatic" consisted of certain levers, weights, bars, and sliding plates, by the use of which, when one section was moved away from another, a "stop" dropped by its own weight, and raised bars, so that the trolley could not pass beyond the end of a section, and, when the sections were brought together, the "stop" was lifted by means of beveled edges of sliding plates coming in contact with each other, thus rendering the continuous track clear. The "automatic" was a contrivance intended to make the overhead track more secure than it would have been without it. At the time the accident occurred, the northern section of the track had been moved to the westward. The trolley rested upon the middle section. The plaintiff's intestate was at work at a point some feet north of the middle section, and in a direct line with that section. He was working near a punching machine. He and two of his fellow workmen were busy with a beam for the purpose of suspending it. One of these fellow workmen (Berterman) told the other (Jones) to bring the trolley. Jones pulled the chain attached to the trolley to drag it along, exerting, as he says, more than the usual force. The "automatic" failed to work at the north end of the middle section. The trolley ran off, and fell on Quigley. After the accident, it was observed that there was nothing the matter with it, except that there was dust and oil, making a heavy and gummy substance where the sliding plates were designed to meet. There was a superintendent of the shop (Bruggeman) and a foreman (Williams), whose duties were, among other things, to take charge of the shop and the men employed therein, and to oil the "automatic," and see that the machinery was kept in good order. There is some proof that the device of the "automatic," which had been in use for four or six months before the accident, did not always work effectively; some slight derangement occurring in its operation on one or two occasions. There is evidence to show that everything connected with the track and the position of the sections and the trolley was exposed to view, so that every employé could see and observe precisely what its operation was, and there was a printed notice given to each workman on every Saturday night, on the envelope containing his wages, cautioning all employés to exercise all care to prevent accidents, forbidding them to use any tools, rope, timbers, or other appliances without carefully inspecting the same, to see that they were in good order. At the close of the trial, the court directed a verdict for the defendants, and from the judgment entered upon that verdict the plaintiff appeals, claiming that the defendants were liable upon the proofs, on the ground that it was shown that they were guilty of negligence in not providing a reasonably safe place for the plaintiff's intestate to work in; that they did not supply a proper and safe apparatus connected with the machinery; that they did not properly inspect or provide for the proper inspection of such appliances as were furnished; that they failed to promulgate and enforce suitable rules for the use of the appliances; and that they employed incompetent workmen.

We concur in the view of the trial justice that the proof in the

case was not sufficient to establish that the defendants did not furnish a reasonably safe place for the plaintiff's intestate to work in or reasonably safe machinery and appliances. As the evidence is presented, it is quite clear that the peril to which the plaintiff's intestate was exposed was that of the trolley being moved from the middle section, and falling off, while the northerly section was disconnected or moved away. It is argued that it was the defendants' duty to provide against that contingency, and it is perfectly clear that such provision was made. There is no proof whatever to show that there was any inherent defect in the "automatic" which was designed to prevent such an occurrence as that which happened, nor is there any satisfactory proof to show insufficiency in the "automatic" to respond to the use for which it was intended, so far as its design, and the material of which it was made and its general construction, are concerned. All that can be said concerning it at the time the accident occurred is that for some reason it did not then operate so as to stop the trolley at the northerly edge of the middle section. The evidence would seem to indicate, although that is not in reality shown, that the formation of the gummy substance above alluded to interfered with the action of the appliances. We do not think it can be said, in any just sense, that the defendants were responsible for that condition, if the accident is to be ascribed to it. They had provided what they considered to be, and what apparently was, an additional safeguard to the trolley. It had been tried and tested, had been in constant use for months, and only on one occasion had it failed to answer its purpose, and what then caused it to fail appears to have been remedied. There were no radical defects in it, and the defendants were entitled to rely upon their belief that it would be a sufficient protection, if kept in order. Positive instructions had been given by them to their superintendent or foreman to keep all machinery in good order. They had discharged their duty to their employés in that regard. They had given notice to all their employés not to use machinery unless they saw that it was in good order, and they had provided by instructions for inspection of the machinery, tools, and apparatus used in their shop.

The unfortunate occurrence which resulted in the death of the plaintiff's intestate was brought about by the carelessness of Jones in pulling the trolley along the middle section without observing (for he swears that he did not observe it) that the northerly section was out of place. That the failure of the "automatic" to work contributed to the accident is doubtless true. If it may be assumed that the reason of its failure to work was the formation of the gummy substance composed of oil and dust and dirt, the failure to inspect and properly oil the apparatus was negligence of a fellow servant of the plaintiff's intestate. The defendants had furnished means and conveniences for keeping the machinery in condition for safe operation, and some one had been employed whose duty it was to use those means and conveniences. The neglect to use them is not chargeable to the master. Webber v. Piper, 109 N. Y. 496, 17 N. E. 216.

The judgment and order must be affirmed, with costs.

RUMSEY and PATTERSON, JJ., concur.

VAN BRUNT, P. J.   I concur.   I do not think that there would be any negligence on the part of the defendants shown, if the automatic device was out of order.   The trolley would have been a proper machine without it, as is conceded; and the endeavors of the defendants to make the machine safer than a proper machine would be ought not to be made the means of fastening a liability upon them.

RUMSEY, PATTERSON, and McLAUGHLIN, JJ., concur.